# Ashford Healthcare Systems, Inc

RECEIVED
TALLAHASSEE OFFICE

2010 JUL 30  A 11: 23

OFFICE OF THE
UNITED STATES ATTORNEY
NORTHERN DISTRICT
OF FLORIDA

# And

# DasSee Community Health Systems, LLC

With "Express Permission" from Attorney Alan Turnage, (Ashford Healthcare Systems, Inc), (ASHFORD) I, Michael C. Lake, President/CEO of Ashford Healthcare Systems, Inc and President/CEO of DasSee Community Health Systems, LLC, do hereby provide the following information to Attorney Alan Sprowls, United States Department of Justice.


## HISTORY:

ASHFORD, was incorporated in the State of Florida on February 3, 1999, as a Florida not for profit. Directors at the time were, Stephen Eaton (Centennial Healthcare), Kent Fosha (Centennial Healthcare), and Michael Lake (Centennial Healthcare), with the sole purpose of leasing Gadsden Community Hospital in Quincy, Florida. From February 1999 to February 2001, ASHFORD, was solely owned by Centennial Healthcare.

DasSee Community Health Systems, LLC, (DASSEE), was formed on February 2, 2001 as a LLC in the State of Florida. Directors at this time were Michael Lake, (DASSEE), David Paris (DASSEE) and Donald Bradford (DASSEE). Its sole purpose was to operate hospitals located in Blountstown, FL (Calhoun Liberty Hospital), Apalachicola, FL (George E. Weems Hospital) and Quincy, FL (Gadsden Community Hospital).

Page 2

**FEBRUARY 1, 2001**

On February 1, 2001 a OPERATIONS TRANSFER AGREEMENT, was made and entered into by and between Centennial Healthcare Properties Corporation, a Georgia Corporation, Centennial Healthcare Investment Corporation, a Georgia Corporation, Centennial Healthcare Management Corporation, a Georgia Corporation, Ashford Healthcare Systems, Inc, a Florida Not for Profit corporation and DasSee Community Healthcare Systems, LLC, a Florida Limited Liability Company. (EXHIBIT 1)

At the signing DASSEE, purchased all the assets and leaseholds of Calhoun Liberty Hospital, George E. Weems Hospital and ASHFORD (Gadsden Community Hospital)

DASSEE has always been the sole owner of ASHFORD, since February 1, 2001. Additionally, on May 11, 2001, DASSEE/ASHFORD, entered into a revolving Line of Credit, with a maximum loan amount of $4,000,000, with Heller Healthcare Finance, Inc (HELLER).

In 2003, Heller Healthcare Finance, Inc, was purchased by GE HFS Holdings, Inc, a Delaware corporation. Due to the fact, that HELLER/GE HFS, determined that DASSEE to be the sole owner of ASHFORD all assets were cross collateralized.

As with Centennial Healthcare, all of ASHFORD financials were rolled forward into DASSSEE. As (EXHIBIT 2), please find the 2004 Audit prepared by Petro and Associates, P.C, a Certified Public Accountants, Mobile, Al. As indicated in Note 1 of the Audit, the firm has indicated that DASSEE is the sole owner of ASHFORD.

Page 3

## NOVEMBER 2005

The common ownership relationship was confirmed in November 2005, when ASHFORD filed for bankruptcy. Within a week. GE/ HFS , terminated all funding to both ASHFORD and DASSEE. Thus, neither ASHFORD nor DASSEE had the ability to continue operations.

## CONCLUSION

This writer believes that the facts listed above does in fact indicated that both corporations are one in the same. Since all assets were cross collateralized, then all liabilities are treated the same.

There exist sufficient assets or potential assets in the ASHFORD bankruptcy to cover any and all tax liability due by DASSEE/ASHFORD.

I hereby swear under penalty of perjury that the information contained above is true and correct to the best of knowledge and belief.

_July 28, 2010_
Date

_Michael C. Lake_
Signature

Sworn to and subscribed before me this

28TH day of July 2010

Signature of Notary Public _____



## OPERATIONS TRANSFER AGREEMENT

THIS OPERATIONS TRANSFER AGREEMENT ("Agreement") is made and entered into as of February 1, 2001, by and between CENTENNIAL HEALTHCARE PROPERTIES CORPORATION, a Georgia corporation ("CHPC"), CENTENNIAL HEALTHCARE INVESTMENT CORPORATION, a Georgia corporation ("CHIC"; CHPC and CHIC collectively referred to as "Transferor"), CENTENNIAL HEALTHCARE MANAGEMENT CORPORATION< a Georgia corporation ("CHMC"), ASHFORD HEATLHCARE SYSTEMS, INC., a Florida not-for-profit corporation ("Ashford") and DASSEE COMMUNITY HEALTH SYSTEMS, LLC, a Florida limited liability company ("DasSee").

### RECITALS:

WHEREAS, CHPC is the licensed operator of a hospital known as Calhoun Liberty Hospital located at 424 Burns Avenue, Blountstown, Florida (the "Calhoun Facility"). CHPC leases the Calhoun Facility pursuant to a certain lease agreement between Calhoun Liberty Hospital Association, Inc. and CHPC (the "Calhoun Lease"); and

WHEREAS, CHIC is the licensed operator of a hospital known as Choctaw County Medical Center located at 148 West Cherry Street, Ackerman, Mississippi (the "Choctaw Facility"). CHIC leases the Choctaw Facility pursuant to a lease agreement between The Board of Trustees of Choctaw County Medical Center and CHIC (the "Choctaw Lease"); and

WHEREAS, CHIC is the licensed operator of a hospital known as George E. Weems Memorial Hospital located at 135 Avenue G. Apalachicola, Florida (the "Weems Facility"). CHIC leases the Weems Facility pursuant a lease agreement between The Board of Commissioners of Franklin County and CHIC (the "Weems Lease"); and

WHEREAS, Ashford is the licensed operator of a hospital known as Gadsden Community Hospital located at U.S. Highway 90 East, Quincy, Florida (the "Gadsden Facility"). CHMC, an affiliate of CHPC and CHIC manages the Gadsden Facility on behalf of Ashford; and

WHEREAS, DasSee has agreed to acquire certain properties of Transferor and CHMC used in the operation of the Calhoun Facility, the Choctaw Facility, the Weems Facility and the Gadsden Facility (collectively, the "Facilities") and to assume operational responsibility for the Facilities by entering into Assignment and Assumptions of the Calhoun Lease, the Choctaw Lease and the Weems Lease and a Management Agreement relating to the Gadsden Facility; and

WHEREAS, in addition to the terms defined in this Agreement, certain other terms used in this Agreement are defined in Exhibit A and these terms, when used in this Agreement, have the meanings set forth in Exhibit A.

1



NOW, THEREFORE, in consideration of ten dollars ($10.00), the premises and mutual promises and covenants of the parties contained in this Agreement and other good and valuable consideration, the receipt, adequacy and sufficiency of which is acknowledged by the parties, the parties agree as follows:

## ARTICLE I

### TRANSFER OF OPERATIONS FROM TRANSFEROR AND CHMC TO DASSEE.

1.1    Transfer of Leasehold. On even date herewith, Transferor has executed and delivered to DasSee an assignment of Transferor's rights, title and interest as lessee under the Calhoun Lease, the Choctaw Lease and the Weems Lease (collectively, the "Leases") to DasSee and the assumption of these leases by DasSee (the "Assignment Documents"). DasSee shall hold the Assignment Documents until the date DasSee obtains all necessary regulatory consents and approvals needed for the transfer of the leasehold interest in the Facilities and the operation of the Facilities by DasSee, including but not limited to the consents of the landlords for each of the Leases to the transfer by Transferor and the assumption by DasSee of Transferor's interest in the Leases (the "Effective Date").

1.2    Conveyance of Inventory and Personal Property. Upon the terms of this Agreement, on the Effective Date, Transferor and CHMC will transfer, convey, assign and deliver to DasSee, and DasSee will acquire from Transferor and CHMC, free and clear of all Encumbrances, all of Transferor's and CHMC's right, title and interest under, in and to the good and usable inventories of cleaning supplies, food, all medical supplies, inventory of drugs and other good and usable medical and nonmedical inventories and supplies located in and about the Facilities (the "Inventory") and all licenses, permits and approvals which are transferable and which relate to the operation of the Facilities and all equipment, furniture, furnishings, fixtures, and other personal property located on or at the Facilities or used in connection with the business of the Facilities as a going concern and with the operation of the Facilities (the "Personal Property").

1.3    Transfer of Trade Names. On the Effective Date, Transferor will sell, transfer, convey and assign to DasSee, free and clear of all Encumbrances, whatever right, title and interest of Transferor has in the trade names "Calhoun Liberty Hospital", "Choctaw County Medical Center" and "George E. Weems Memorial Hospital" and all related applications, registration certificates and other documents and rights.

1.4    Accounting and Transfer of Patient Trust Funds and Patient Property. On the Effective Date, Transferor and CHMC will prepare a complete accounting of all trust funds of residents (the "Patient Trust Funds"), and an inventory of all residents' property ("Patient Property") held by Transferor and CHMC on behalf of residents at the Facilities. As soon as possible, and in no event later than two business days following the Effective Date, Transferor and CHMC will transfer Patient Trust Funds and Patient Property to DasSee and DasSee will accept the Patient Trust



Funds and Patient Property in trust on behalf of the residents, in accordance with applicable Legal Requirements.

    1.5    <u>Cost Reports.</u>  Transferor and CHMC will prepare and file with the appropriate Medicare and Medicaid agencies its final cost reports for their respective operations at the Facilities as soon as practicable after the Effective Date, but in no event later than the date on which final cost reports are required to be filed by applicable Legal Requirements of the Medicare and Medicaid programs.

    1.6    <u>Employees.</u>  On a date mutually acceptable to Transferor, CHMC and DasSee prior to the Effective Date, Transferor, CHMC and DasSee will send concurrent notices to the effect that (1) Transferor and CHMC will terminate the employment of all employees employed at the Facilities as of 12:01 a.m., Eastern time (the "Transition Time") on the Effective Date, and (2) DasSee or an Affiliate will offer employment to all active employees of the Facilities effective as of the Effective Date.

    1.7    <u>Accounts Receivable.</u>

        (a)    DasSee will not acquire any, and Transferor, CHMC and/or Ashford will retain all of their respective right, title and interest in and to all, accounts receivable for services performed prior to the Effective Date, including any accounts receivable arising from rate adjustments which relate to the period prior to the Effective Date even if these adjustments occur after the Effective Date.

        (b)    Payments received by DasSee after the Effective Date from third party payors, including private pay, Medicare, Medicaid and VA, will be handled as follows:

            (i)    if and to the extent payments indicate on the accompanying remittance advice what period the payments cover, DasSee, Transferor, CHMC and Ashford will apply the payments as directed on the remittance advice; and

            (ii)    if a payment from any party does not specifically indicate on the accompanying remittance advice what period the payment covers, DasSee, Transferor, CHMC and Ashford will employ best efforts to contact the payor to clarify to which period the payment applies. The parties agree to use these efforts for the period commencing with the Effective Date and expiring one (1) year thereafter. In the event these efforts fail to determine to which period a payment should apply, DasSee, Transferor, CHMC and Ashford will apply the payment first to the oldest period of service open with respect to the account.

        (c)    If any party receives any payment for services at any time during the period commencing with the Effective Date and expiring one (1) year thereafter that should be remitted to the other party, the party receiving the payment will remit it to the other party within thirty days of receipt by the receiving party.

3

(d)     If DasSee receives any payments after the Effective Date from any federal or state agency that represents reimbursement for services rendered by Transferor, CHMC or Ashford prior to the Effective Date, DasSee, within thirty days after its receipt of the payment, will forward the payment to Transferor. If Transferor, CHMC or Ashford, as the case may be, receives any payments after the Effective Date from any federal or state agency that represents reimbursement for services rendered by Centennial on or after the Effective Date, Transferor, CHMC or Ashford, as the case may be, within thirty days after its receipt of the payment, will forward the payment to DasSee. Transferor, CHMC, Ashford and DasSee agree to cooperate in providing the State of Florida with an appropriate statement concerning Medicaid liabilities and the respective obligations of the parties if and to the extent required by Legal Requirements.

(e)     If the parties determine that any payment hereunder was misapplied by it, that party will remit the payment to the other party within thirty days after the determination is made. Each party will have the right to inspect applicable receipts records of the other party in order to confirm the other party's compliance with the obligations imposed on it under this Section.

1.8     Operating Contracts.

(a)     Transferor and CHMC will assign the operating contracts pertaining to the Facilities (the "Operating Contracts") to DasSee on the Effective Date. DasSee agrees to be bound by all of the terms and conditions of the Operating Contracts and assumes all obligations arising under the Operating Contracts on or after the Effective Date. All obligations arising under the Operating Contracts prior to the Effective Date will remain the responsibility of Transferor or CHMC, as the case may be.

(b)     Transferor and CHMC will exert best efforts to obtain in writing any needed approvals and consents to its assignment to DasSee of Operating Contracts and will provide copies of written approvals and consents to DasSee on or prior to the Effective Date.

1.9     Proration of Taxes and Other Items. On the Effective Date, all prepaid and accrued expenses (including electricity, gas, water and sewer and other utilities) and revenues arising under the Operating Contracts will be prorated across the period over which the expenses or revenues relate, based on the most recent information available, and will be paid or credited as appropriate on the Effective Date. Utility charges which are not metered and read on the Effective Date will be estimated based on prior charges, and will be prorated upon receipt of applicable statements. The parties agree that all amounts owed by one party to the other for utilities and other prorated expenses and revenues will be paid as soon as reasonably possible following the Effective Date, but in no event later than ten business days following the date that the information necessary for each adjustment becomes available.

1.10    Accounts Payable. Transferor and CHMC will retain and  DasSee will have no obligation for payment of all accounts payable relating to the operation of the Facilities arising prior

4



to the Effective Date. DasSee will assume all obligations for the payment of the accounts payable relating to the operation of the Facilities arising on or after the Effective Date. DasSee agrees that it will not pay any accounts payable relating to the operation of the Facilities arising prior to the date of this Agreement without the prior consent of Transferor and CHMC, which consent will not be withheld, conditioned or delayed.

1.10    Access to Records.

(a)    On the Effective Date, Transferor and CHMC will deliver to DasSee all of Transferor's and DasSee's records or copies thereof that relate to the patient records and operation of the Facilities, including Inventory, Patient Trust Funds, Patient Property, patient medical and financial records, employee records and such other records required to be maintained for the Facilities under any applicable Legal Requirements. Transferor and CHMC may remove from the Facilities on the Effective Date the financial records that relate to its corporate operations, and the records of former employees of the Facilities, along with extra copies of records otherwise being delivered to DasSee.

(b)    Following the Effective Date: (1) DasSee will allow Transferor and CHMC and their respective agents and representatives to have reasonable access (upon reasonable prior notice and during normal business hours) to the Facilities to make copies of the books and records and supporting material of the Facilities relating to the period prior to the Effective Date to the extent reasonably necessary to enable Transferor and CHMC to investigate and defend malpractice, employee or other claims, to file or defend cost reports and tax returns and to verify accounts receivable collections due Transferor, CHMC or Ashford; (2) Transferor and CHMC will be entitled to remove the originals of any records delivered to DasSee for purposes of litigation involving a patient or employee to whom the records relate if an officer of or counsel for Transferor or CHMC certifies and agrees in writing that originals must be produced in order to comply with applicable Legal Requirements in connection with the litigation and that the original records will be returned promptly to DasSee following its use. Transferor and CHMC agree to use best efforts in connection with having access to the Facilities to minimalize the disruption to DasSee's operations. Transferor and CHMC will reimburse DasSee for all reasonable costs associated with making copies of such books, records and supporting materials.

(c)    To the extent provided by Transferor and CHMC, DasSee will use best efforts to maintain books, records and other material comprising records of the operations of the Facilities prior to the Effective Date, including patient records and records of patient funds, as requested in writing by Transferor and/or CHMC (provided the request is within the extent required by Legal Requirements).

1.11    Approvals of Governmental Bodies. As promptly as practicable after the date of this Agreement, DasSee will make all filings required by Legal Requirements to be made by it to consummate the transactions contemplated by this Agreement. Between the date of this Agreement

5

and the Effective Date, and for up to six months thereafter as reasonably requested by DasSee, Transferor, CHMC and Ashford will cooperate with DasSee on all filings that DasSee is making under Legal Requirements in connection with the transactions contemplated by this Agreement and in obtaining all Consents required by DasSee to consummate the transactions contemplated by this Agreement. Transferor and/or CHMC will provide to DasSee within five business days of receipt of a request from DasSee information and documents needed for these filings.

1.12    Insurance Policies. As soon as possible after the date of this Agreement, but in no event later than five business days after the date of this Agreement, Transferor will provide DasSee with a list of all insurance policies relating to the Facilities, including policy numbers, limits of coverage, policy terms, named insureds and names of insurers. DasSee will be responsible for obtaining insurance for the Facilities on and after the Effective Date. During the Interim Operating Period (as defined below), DasSee shall obtain general liability insurance in amounts satisfactory to Transferor and CHMC and in accordance with the Interim Management Agreements (as defined below).

1.13    Adjustments to Amounts Paid. Transferor, CHMC and DasSee will make a good faith effort within 180 days following the Effective Date to review books and records relating to the Facilities and amounts paid and assets transferred under this Agreement and to make adjustments to conform to the amounts, definitions and other criteria stated in this Agreement. Transferor, CHMC or DasSee, as the case may be, will pay any amounts determined and agreed to be owing to the other party within five business days of the determination and agreement; however, DasSee may offset any amount due Transferor or CHMC against the Note (as defined below).

1.14    Transferor and CHMC Liabilities. Except as provided in this Agreement, DasSee will not assume any liabilities of any kind or nature of Transferor or CHMC or any liabilities of any kind or nature arising out of the business conducted with respect to the Facilities prior to the Effective Date.

1.15    Interim Operations; Net Operating Profits and Losses. Commencing on the date of this Agreement and continuing through the Effective Date (the "Interim Operating Period"), the parties intend that DasSee will operate the Facilities pursuant to Management Agreements substantially similar to the form attached hereto as Exhibit B (the "Interim Management Agreements"). Notwithstanding anything contained herein to the contrary and in further consideration of this Agreement, the parties acknowledge and agree that it is their intention that DasSee shall be entitled to the net operating profits and responsible for the net operating losses generated by the Facility commencing on February 1, 2001 and continuing throughout the term of this Agreement. The parties agree to cooperate with each other in determining any such amounts.

6

## ARTICLE II

### EFFECTIVE DATE

The transfer of Inventory and other transactions contemplated by this Agreement will occur on the date DasSee shall have received all approvals necessary for the operation of the Facilities, including but not limited to the consent of each landlord of each of the Leases. In the event DasSee is unable to obtain these consent on or before June 30, 2001, then any party may terminate this Agreement and the transfer of the Leases by notice to the other party.

## ARTICLE III

### REPRESENTATIONS AND WARRANTIES OF THE PARTIES.

3.1    Representations and Warranties of Transferor.  Transferor hereby represents and warrants to DasSee as follows:

(a)    Transferor is a corporation duly incorporated and existing under the laws of the State of Georgia. Transferor has, and at all times has had, full corporate power and authority to own and lease its properties as the properties are now owned and leased and to conduct its business as and where the businesses have and are now being conducted.

(b)    Transferor has the corporate power and authority to execute, deliver and perform this Agreement, and has taken all actions required to authorize, execute, deliver and perform this Agreement, including approval by the board of directors of Transferor.

(c)    This Agreement has been duly executed and delivered by Transferor and constitutes the legal, valid and binding obligation of Transferor, enforceable against Transferor in accordance with its terms. Transferor has full right, power, authority and capacity to execute and deliver this Agreement and to perform its obligations under this Agreement and to consummate all of the transactions contemplated by this Agreement.

(d)    Except for consents to certain contracts (including the Leases) and any required governmental organizations, no consent, action, approval or authorization of or registration, declaration of filing with any third party or Governmental Body is required for Transferor to execute this Agreement and perform the transaction contemplated by this Agreement by Transferor.

(e)    Transferor has good and marketable title to the Inventory, free and clear of all Encumbrances. The Inventory is sufficient for the operation of the Facility in the ordinary course consistent with past practice and consists of items which are good and usable within normal nursing home practices.

7

Healthcare Analysis Corp                                    @029



3.2 <u>Representations and Warranties of Centennial</u>. DasSee hereby represents and warrants to Transferor as follows:

(a)    DasSee is a limited liability company duly organized and existing under the laws of the State of Florida. DasSee has, and at all times has had, full power and authority to own and lease its properties as the properties are now owned and leased and to conduct its business as and where the businesses have and are now being conducted.

(b)    DasSee has the power and authority to execute, deliver and perform this Agreement, and has taken all actions required to authorize, execute, deliver and perform this Agreement, including approval by the members of DasSee.

(c)    This Agreement has been duly executed and delivered by DasSee and constitutes the legal, valid and binding obligation of DasSee, enforceable against DasSee in accordance with its terms. DasSee has full right, power, authority and capacity to execute and deliver this Agreement and to perform its obligations under this Agreement and to consummate all of the transactions contemplated by this Agreement.

(d)    Except for DasSee's obligation to obtain a license to operate the Facilities, no consent, action, approval or authorization of or registration, declaration of filing with any third party or Governmental Body is required for DasSee to execute this Agreement and perform the transaction contemplated by this Agreement by DasSee.

ARTICLE IV

<u>PAYMENT BY DASSEE TO TRANSFEROR AND CHMC</u>

In consideration of the transfer and assignment of the Leases, the Inventory and the Personal Property, DasSee shall execute and deliver to Transferor and CHMC a promissory note substantially in the form attached hereto as <u>Exhibit C</u> (the "Note").

ARTICLE V

<u>CONDITIONS PRECEDENT TO DASSEE'S OBLIGATION TO CLOSE</u>

DasSee's obligation to consummate the transactions contemplated by this Agreement, and to take the actions required to be taken by DasSee on and after the Effective Date, is subject to the satisfaction, at or prior to the Effective Date, of each of the following conditions (any of which may be waived by DasSee, in whole or in part):

8

5.1     <u>Accuracy of Representations</u>.  Each representation and warranty of Transferor in this Agreement must be accurate in all material respects as of the date of this Agreement, and must be accurate in all material respects as of the Effective Date as if made on the Effective Date.

5.2     <u>Transferor's Performance</u>.  All of the covenants and obligations that Transferor is required to perform or to comply with pursuant to this Agreement at or prior to the Effective Date must have been duly performed and complied with in all material respects.

5.3     <u>No Injunction</u>.  There must not be in effect any Legal Requirement or any injunction or other Order that prohibits the transfer of the operations of the Facilities by Transferor to DasSee and has been adopted or issued, or has otherwise become effective, whether before or after the date of this Agreement.

5.4     <u>Governmental Authorizations</u>.  DasSee will have obtained all Governmental Authorizations applied for by DasSee to assume the operation of the Facilities on and after the Effective Date.

ARTICLE VI

<u>CONDITIONS PRECEDENT TO TRANSFEROR'S OBLIGATION TO CLOSE</u>

Transferor's obligation to consummate the transactions contemplated by this Agreement, and to take the other actions required to be taken by Transferor on and after the Effective Date, is subject to the satisfaction, at or prior to the Effective Date, of each of the following conditions (any of which may be waived by Transferor, in whole or in part):

6.1     <u>Accuracy of Representations</u>.  Each of Centennial's representations and warranties in this Agreement must be accurate in all material respects as of the date of this Agreement and must be accurate in all material respects as of the Effective Date as if made on the Effective Date.

6.2     <u>Centennial's Performance</u>.  All of the covenants and obligations that Centennial is required to perform or to comply with pursuant to this Agreement at or prior to the Effective Date must have been performed and complied with in all material respects.

6.3     <u>No Injunction</u>.  There must not be in effect any Legal Requirement or any injunction or other Order that prohibits the transfer of the operations of the Facility by Transferor to Centennial and has been adopted or issued, or has otherwise become effective, whether before or after the date of this Agreement.

6.4     <u>Governmental Authorizations</u>.  Centennial will have obtained all Governmental Authorizations necessary for it to assume the operations of the Facility on and after the Effective Date.

9



## ARTICLE VII

### INDEMNIFICATION.

7.1    Transferor Indemnity. Transferor will indemnify and hold DasSee and its Affiliates, their directors, officers, employees, agents and contractors, and their respective successors and assigns (collectively "DasSee Indemnitees"), harmless from all losses, damages, liabilities or expenses (including attorneys fees and court costs) arising directly or indirectly from or in connection with (i) any breach of any representation or warranty made by Transferor in this Agreement; (ii) any breach by Transferor of any covenant, agreement or obligation of Transferor in this Agreement; (iii) any actions or omissions of Transferor prior to the Effective Date with respect to the Patient Trust Funds, Patient Property or Operating Contracts; or (iv) any claim, demand or proceeding for reimbursement of overpayment or any related liability for penalties, fines or sanctions by any Governmental Authority or third party payor for any period occurring or ending on or prior to the Effective Date.

7.2    DasSee Indemnity. DasSee will indemnify and hold Transferor, CHMC and their Affiliates, their directors, officers, employees, agents and contractors, and their respective successors and assigns (collectively, "Transferor Indemnitees"), harmless from all losses, damages, liabilities or expenses (including attorneys fees and court costs) arising directly or indirectly from or in connection with (i) any breach of any representation or warranty made by DasSee in this Agreement; (ii) any breach by DasSee of any covenant, agreement or obligation of DasSee in this Agreement; (iii) any actions or omissions of DasSee from and after the date of this Agreement with respect to the operation of the Facilities, the Patient Trust Funds, Patient Property or Operating Contracts; or (iv) any claim, demand or proceeding for reimbursement of overpayment or any liability for related penalties, fines or sanctions by any Governmental Authority or third party payor for any period occurring on or after the Effective Date.

## ARTICLE IVI

### MISCELLANEOUS PROVISIONS

8.1    Amendment; Waiver. This Agreement may be amended, modified or superseded only by a written instrument signed by all of the parties to this Agreement. No party will be deemed to have waived compliance by another party of any provision of this Agreement unless the waiver is contained in a written instrument signed by the waiving party and no waiver that may be given by a party will be applicable except in the specific instance for which it is given. The failure of any party to enforce at any time any of the provisions of this Agreement or to exercise any right or option contained in this Agreement or to require at any time performance of any of the provisions of this Agreement, by any of the other parties will not be construed to be a waiver of the provisions and will not affect the validity of this Agreement or any of its provisions or the right of the party thereafter to enforce each provision of this Agreement. No course of dealing will operate as a waiver or modification of any provision of this Agreement or otherwise prejudice a party's rights, powers and



remedies.

    8.2   <u>Limited Assignment; Binding Effect</u>. No party may assign any of its rights or obligations under this Agreement without obtaining the prior consent of the other parties to this Agreement. No assigning party will be relieved of its obligations arising under this Agreement. Subject to the foregoing, all the provisions of this Agreement will be binding upon and will inure to the benefit of and be enforceable by the parties to this Agreement and their respective heirs, legal representatives, successors and assigns.

    8.3   <u>Construction and Interpretation of Agreement</u>. Section titles or captions in this Agreement are included for purposes of convenience and will not be considered a part of the Agreement in construing or interpreting any of its provisions. All references in this Agreement to Sections will refer to Sections of this Agreement unless the context clearly otherwise requires. When used in this Agreement, the word "including" will have its normal common meaning and any list of items that may follow the word "including" will not be deemed to represent a complete list of the contents of the referent of the subject. The parties have participated jointly in the negotiation and drafting of this Agreement. If any ambiguity or question of intent or interpretation arises, no presumption or burden of proof will arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement. Unless the context otherwise requires, when used in this Agreement, the singular includes the plural, the plural includes the singular, and all nouns, pronouns and any variations thereof refer to the masculine, feminine or neuter, as the identity of the Person may require. This Agreement does not confer on any third party any right, remedy or benefit and no third party has any right to enforce any provision of this Agreement.

    8.4   <u>Severability of Provisions</u>. If a court in any proceeding holds any provision of this Agreement or its application to any Person or circumstance invalid, illegal or unenforceable, the remainder of this Agreement, or the application of the provision to Persons or circumstances other than those to which it was held to be invalid, illegal or unenforceable, will not be affected, and will be valid, legal and enforceable to the fullest extent permitted by law, but only if and to the extent enforcement would not materially and adversely frustrate the parties' essential objectives as expressed in this Agreement. Furthermore, in lieu of any invalid or unenforceable term or provision, the parties intend that the court add to this Agreement a provision as similar in terms to the invalid or unenforceable provision as may be valid and enforceable, so as to effect the original intent of the parties to the greatest extent possible.

    8.5   <u>Confidentiality</u>. Unless otherwise required by law, neither party will disclose either the terms or existence of this Agreement to any Person other than a party's counsel and its representatives or other third parties with whom it must communicate to consummate the transactions contemplated by this Agreement.

    (a)   The parties and their respective agents and employees will hold and keep confidential all information which is proprietary in nature and non-public or confidential, in whole (the "Confidential Information") which any of them may receive from the other party. The parties



11

04/16/2001 07:47 FAX 7166627698          HealthCare Analysis Corp                    ☒ 033



will make a good faith effort to mark Confidential Information provided to the other as confidential or to inform the other party in writing that it considers particular information being provided to be Confidential Information, provided, however, failure to mark any of the Confidential Information as non-public, proprietary or confidential will not affect its status as Confidential Information under the terms of this Agreement. Confidential Information will not include any information in the possession of the receiving party (a) that is developed by the party without reference to and independent of any Confidential Information, (b) is learned from a third party not under any duty of confidence to the disclosing party, or (c) becomes part of the public domain through no fault of the receiving party.

(b)      Neither party nor their respective agents or employees will, without the prior consent of the disclosing party, disclose or use any Confidential Information, in whole or in part, except in connection with the performance of the transactions contemplated by in this Agreement. Unless otherwise required by law, neither party will disclose any Confidential Information acquired as a result of this Agreement to any Person, other than its counsel and other representatives, and other third parties (such as bankers and lessors) with whom it must communicate to consummate the transactions contemplated by this Agreement, all of whom must agree to keep the Confidential Information confidential. If the transactions contemplated by this Agreement do not occur, each party will destroy or return to the disclosing party all copies of documents that contain that party's Confidential Information.

8.6    Nonsolicitation or Employment of Employees of Transferor or CHMC.   For a period commencing on the date of this Agreement and continuing for a period of two (2) years thereafter, DasSee agrees that it will not , whether for its own account or for the account of any other individual, partnership, firm, corporation or other business organization (other than Transferor or CHMC or any Affiliate of Transferor or CHMC), directly or indirectly solicit, endeavor to entice away from Transferor or CHMC or any of their respective Affiliates, or otherwise directly interfere with the relationship of Transferor or CHMC or any of their respective Affiliates with any person who, to the knowledge of DasSee, is employed by or otherwise engaged to perform services for Transferor or CHMC or any of their respective Affiliates (including, but not limited to, any independent sales representatives or organizations). The placement of any general classified or "help wanted" advertisements and/or general solicitations to the public at large or the employment of the current employees of the Facilities shall not constitute a violation of this Section 8.6.

8.7    Exhibits and Schedules.   All Exhibits and Schedules to this Agreement, if any, will constitute part of this Agreement and will be deemed to be incorporated in this Agreement by reference and made a part of this Agreement as if set out in full at the point where first mentioned.

8.8    Counterparts.   This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.

04/16/01  MON 08:33  [TX/RX NO 7116]  ☒ 033

Healthcare Analysis Corp    ☒034



8.9    Entire Agreement.  This Agreement, including the recitals contained in this Agreement, embodies the entire agreement and understanding of the parties related to its subject matter and supersedes all prior proposals, understandings, agreements, correspondence, arrangements and contemporaneous oral agreements relating to the subject matter of this Agreement.  No representation, promise, inducement or statement of intention has been made by any party which has not been embodied in this Agreement.

8.10    Expenses.  Except as otherwise expressly provided for in this Agreement, each party will bear its own expenses in connection with the preparation, execution and performance of its obligations under this Agreement, including all fees and expenses of agents, representatives, counsel and accountants.

8.11    Further Assurances.  Each party will execute and deliver additional documents or take additional actions as may be requested by the other party if the requested document or action is reasonably necessary to effect the transactions contemplated by this Agreement.

8.12    Governing Law.  This Agreement will be governed by, and will be construed and enforced in accordance with, the laws of the State of Georgia.

8.13    Public Announcements.  Up to and through 30 days following the Effective Date, if and when a party desires to make any press release or other public announcement regarding this Agreement or the transactions contemplated by this Agreement (excluding disclosures necessary to submit change of ownership, change of operator or similar and related notices and applications to Governmental Bodies) the party will notify the other party prior to the disclosure and the parties will cooperate to cause a mutually agreeable release or announcement to be issued.

8.14    Notices.  All notices, requests, consents, approvals, waivers, demands and other communications required or permitted to be given or made under this Agreement must be in writing and will be deemed delivered to the parties (a) on the date of personal delivery or transmission by facsimile transmission, (b) on the first business day following the date of delivery to a nationally recognized overnight courier service, or (c) on the third business day following the date of deposit in the United States Mail, postage prepaid, by certified mail, in each case, addressed as follows, or to anther address or person as any party may designate by notice to the others in accordance herewith:



If to Transferor, CHMC
or Ashford:

                    c/o Centennial HealthCare Corporation
                    400 Perimeter Center Terrace, Suite 650
                    Atlanta, Georgia 30346
                    Attn:  Alan C. Dahl, Executive VicePresident
                    Telecopy:  (770) 730-1377
                    Telephone:  (770) 730-1177

With a copy to:            Centennial HealthCare Corporation
                           400 Perimeter Center Terrace, Suite 650
                           Atlanta, Georgia 30346
                           Attn:  Daryl R. Griswold, Senior Vice President and
                                  General Counsel
                           Telecopy:  (770) 730-1350
                           Telephone:  (770) 730-1150

If to Transferor:          DasSee Community Health Systems, LLC
                           23186 Blue Star Hwy
                           Quincy, FL 32353-1979
                           Attn: Michael C. Lake
                           Telecopy: 850-627-4385
                           Telephone: 850-875-1100

8.15   Cumulative Remedies; Specific Performance.  No right or remedy conferred upon or
reserved to any of the parties under the terms this Agreement is intended to be, nor will it be deemed,
exclusive of any other right or remedy provided in this Agreement or by law or equity, but each will
be cumulative of every other right or remedy.  The parties understand and acknowledge that a party
may be damaged irreparably by reason of a failure of another party to perform any obligation under
this Agreement.  Accordingly, if any party attempts to enforce the provisions of this Agreement by
specific performance (including preliminary or permanent injunctive relief), the party against whom
the action or proceeding is brought waives the claim or defense that the other party has an adequate
remedy at law.

        IN WITNESS WHEREOF, the parties have entered into this Agreement as of the date first
written above.

                           Centennial HealthCare Properties Corporation

                           By: _____
                               Alan C. Dahl, Executive Vice President


                           Centennial HealthCare Investment Corporation

                           By: _____
                               Alan C. Dahl, Executive Vice President


14

Centennial HealthCare Management Corporation

By: _____

Alan C. Dahl, Executive Vice President


Ashford Healthcare Systems, Inc.

By: _____

Kent C. Fosha, Vice President


DasSee Community Health Systems, LLC

By: _____

Michael C. Lake, Manager

15



## EXHIBIT A

CERTAIN DEFINED TERMS

*"Affiliate"* -- Any Person that, directly or indirectly, through one or more intermediaries, controlled by, or is under common control with, the Person specified.

*"Confident Information"* -- Any information which is proprietary in nature and non-public or confidential, in whole or in part; provided however Confidential Information does not include any information in the possession of the receiving party (a) that is independently developed by the party, (b) is learned from a third party not under any duty of confidence to the disclosing party or (c) becomes part of the public domain through no fault of the receiving party.

*"Consent"* -- any approval, consent, ratification, waiver, or other authorization (including any Governmental Authorization).

*"Contract"* -- any agreement, contract, obligation, loss, claim, liability, deficiency, Proceeding, demand, assessments, Orders, costs and other expenses (including reasonable attorneys' and accounting fees) of any nature and of any kind whatsoever.



*"Encumbrance"* -- any charge, claim, condition, equitable interest, lien, option, pledge, security interest, right of first refusal, or restriction of any kind, including any restriction on use, voting, transfer, receipt of income, or exercise of any other attribute of ownership.

*"Entity"* -- any corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association or any other type of business organization.

*"Governmental Authorization"* -- any approval, consent, license, permit, waiver, or other authorization issued, granted, given, or otherwise made available by or under the authority of any Governmental Body or pursuant to any Legal Requirement.

*"Governmental Body"* -- any (a) nation, state, county, city, town, village, district, or other jurisdiction of any nature; (b) federal, state, local, municipal, foreign, or other government; (c) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or Entity and any court or other tribunal); (d) multi-national organization or body; or (e) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

*"Legal Requirement"* -- any federal, state, local, municipal, foreign, international, or other Order, Consent, constitution, law, ordinance, principle of common law, regulation, statute, or treaty.

16





*"Order"* — any award, decision, injunction, judgment, writ, decree, order, ruling, subpoena, or verdict entered, issued, made, or rendered by any court, administrative agency, or other Governmental Body or by any arbitrator.

*"Organizational Documents"* — (a) the articles of certificate of incorporation and the bylaws of a corporation; (b) the partnership agreement and any statement of partnership of a general partnership; (c) the limited partnership agreement and the certificate of limited partnership of a limited partnership; (d) the articles of organization and operating agreement of a limited liability company (e) any charter or similar document adopted or filed in connection with the creation, formation, or organization of a Person; and (e) any amendment to any of the foregoing.

*"Person"* -- any individual, Entity, labor union or Governmental Body.

*"Proceeding"* - any action, arbitration, audit, hearing, investigation, litigation, or suit (whether civil, criminal, administrative, investigative, or informal) commenced, brought, conducted, or heard by or before, or otherwise involving, any Governmental Body or arbitrator.

*"Representative"* -- with respect to a particular Person, any director, officer, employee, agent, consultant, advisor, or other representative of the Person, including legal counsel, accountants, and financial advisors.



*"Threatened"* -- a claim, Proceeding, dispute, action, or other matter will be deemed to have been "Threatened" if any demand, statement or notice has been made in writing or a Person has Knowledge that a claim is likely to be pursued in the future.

17

**DASSEE COMMUNITY HEALTH SYSTEMS, LLC**
**AND ASHFORD HEALTHCARE SYSTEMS, INC.**

*REVIEWED FINANCIAL STATEMENTS*
*For the seven months ended December 31, 2001*
*and the years ended  December 31,  2002 and 2003*

*COMPILED FINANCIAL STATEMENTS*
*For the year ended December 31, 2004*

Exhibit 2
meh 7/27/10

**ASSEE COMMUNITY HEALTH SYSTEMS, LLC
AND ASHFORD HEALTHCARE SYSTEMS, INC.**
**Table of Contents**

Compilation Report                                    Page(s)    3

Unaudited Financial Statements:

   December 31, 2001                                          4-6

   December 31, 2002                                          7-9

   December 31, 2003                                          10-12

   December 31, 2004                                          13-15

Notes to Financial Statements                                 16-24



# PETRO & ASSOCIATES, P.C.
*Certified Public Accountants*

Robert E. Petro, CPA
J. Woodham, CPA
----------------
Member
American Institute of
Certified Public Accountants

2750 Shanandoah Ct. W.
Mobile, AL 36695
(251) 634-0133
(678) 475-7177
(251) 633-9532 (fax)

<u>Accountants' Report</u>

Board of Directors
DasSee Community Health Systems, LLC
Ashford Healthcare Systems, Inc.

We have reviewed the accompanying balance sheets of DasSee Community Health Systems, LLC and Ashford Healthcare Systems, Inc. as of December 31, 2001, 2002, 2003 and we have compiled the accompanying balance sheet for the year ended December 31, 2004, and the related statement of operations and changes in net assets, and cash flows for the periods then ended, in accordance with *Statements on Standards for Accounting and Review Services* issued by the American Institute of Certified Public Accountants. All information included in these financial statements is the representation of the management of DasSee and Ashford.

A review consists principally of inquiries of company personnel and analytical procedures applied to financial data. It is substantially less in scope than an audit in accordance with generally accepted auditing standards, the objective of which is the expression of an opinion regarding the financial statements taken as a whole. Accordingly, we do not express such an opinion.

A compilation is limited to presenting in the form of financial statements information that is the representation of management (the owners). We have not audited or reviewed the accompanying financial statements for the year ended December 31, 2004 and, accordingly, do not express an opinion or any other form of assurance on them.

Based upon our review of the financial statements for the seven months ended December 31, 2001 and the years ended December 31, 2002 and 2003, we are not aware of any material modifications that should be made to the accompanying financial statements in order for them to be in conformity with generally accepted accounting principles.

*Petro & Associates, P.C.*

Petro & Associates, P.C.
Certified Public Accountants

Mobile, Alabama
January 22, 2004



**DASSEE COMMUNITY HEALTH SYSTEMS, LLC**
**ASHFORD HEALTHCARE SYSTEMS, INC.**

**BALANCE SHEET**

**AS OF DECEMBER 31, 2001**

| | ASHFORD | DASSEE | Eliminations | Combined Totals |
|---|---|---|---|---|
| **ASSETS** | | | | |
| **CURRENT ASSETS** | | | | |
| Cash and cash equivalents -- Notes 1 and 4 | $131,999 | $1,021,187 | | $1,153,186 |
| Accounts receivable - net of Uncollectibles and contractual adjustments -- Notes 1 and 8 | 2,783,118 | 2,332,238 | | 5,115,356 |
| Other receivables | 37,695 | 83,879 | | 121,574 |
| Due from/to intercompany receivable -- Note 11 | | 2,536,403 | (2,536,403) | 0 |
| Inventory -- Note 1 | 71,813 | 59,466 | | 131,279 |
| Total Current Assets | 3,024,625 | 6,033,173 | (2,536,403) | 6,521,395 |
| PROPERTY, PLANT AND EQUIPMENT - NET Notes 1 and 2 | 332,850 | 1,214,586 | | 1,547,436 |
| **TOTAL ASSETS** | $3,357,475 | $7,247,759 | ($2,536,403) | $8,068,831 |
| **LIABILITIES AND NET ASSETS** | | | | |
| **LIABILTIES** | | | | |
| **CURRENT LIABILITIES** | | | | |
| Accounts payable | $1,286,899 | $1,393,900 | | $2,680,799 |
| Accrued wages and payroll liabilities | 154,204 | 113,524 | | 267,728 |
| Accrued vacation and other absences | 69,500 | 73,906 | | 143,406 |
| Due to Medicare | 0 | 0 | | 0 |
| Due to/from intercompany receivable -- Note 11 | 864,953 | 1,671,450 | (2,536,403) | 0 |
| Note payable | 0 | 3,500,000 | | 3,500,000 |
| Total Current Liabilities | 2,375,556 | 6,752,780 | | 6,591,933 |
| **NET ASSETS** | | | | |
| Paid in Capital | 77,882 | 588,049 | | 665,931 |
| Unrestricted net assets | 904,037 | (93,070) | | 810,967 |
| Total Net Assets | 981,919 | 494,979 | | 1,476,898 |
| **TOTAL LIABILTIES AND NET ASSETS** | $3,357,475 | $7,247,759 | ($2,536,403) | $8,068,831 |

See Accountants' Report and Notes.



**DASSEE COMMUNITY HEALTH SYSTEMS, LLC**
**ASHFORD HEALTHCARE SYSTEMS, INC.**

**STATEMENT OF OPERATIONS AND CHANGES IN NET ASSETS**

**FOR THE SEVEN MONTHS ENDED DECEMBER 31, 2001**

|  | ASHFORD | DASSEE | Eliminations | Combined Totals |
|---|---|---|---|---|
| Unrestricted revenues and other support: |  |  |  |  |
| Net patient service revenue -- Note 3 | $5,542,835 | $4,331,057 |  | $9,873,892 |
| Other operating revenue | 525,258 | 1,106,775 | (444,000) | 1,188,033 |
|  |  |  |  |  |
| Total unrestricted revenues and other support | 6,068,093 | 5,437,832 |  | 11,061,925 |
|  |  |  |  |  |
| Expenses |  |  |  |  |
| Salaries and wages | 2,802,304 | 2,573,646 |  | 5,375,950 |
| Employee benefits | 154,781 | 99,021 |  | 253,802 |
| Professional fees | 170,078 | 401,180 |  | 571,258 |
| Purchased services | 259,584 | 460,381 |  | 719,965 |
| Maintenance and repairs | 70,816 | 85,413 |  | 156,229 |
| Supplies | 536,077 | 401,509 |  | 937,586 |
| Provision for bad debts | 654,919 | 448,983 |  | 1,103,902 |
| Insurance | 0 | 9,695 |  | 9,695 |
| Utilities | 111,433 | 77,258 |  | 188,691 |
| Other | 114,284 | 234,634 |  | 348,918 |
| Depreciation | 20,068 | 45,778 |  | 65,846 |
| Lease expense | 65,712 | 234,513 |  | 300,225 |
| Interest | 0 | 218,891 |  | 218,891 |
| Management fee | 204,000 | 240,000 | (444,000) | 0 |
|  |  |  |  |  |
| Total expenses | 5,164,056 | 5,530,902 |  | 10,250,958 |
|  |  |  |  |  |
| Revenues and gains in excess of Expenses and Losses | 904,037 | (93,070) |  | 810,967 |
|  |  |  |  |  |
| Net assets, beginning of year | 0 | 0 |  | 0 |
|  |  |  |  |  |
| NET ASSETS, END OF YEAR | $904,037 | ($93,070) |  | $810,967 |

See Accountants' Report and Notes.

5



**DASSEE COMMUNITY HEALTH SYSTEMS, LLC**
**ASHFORD HEALTHCARE SYSTEMS, INC.**

**STATEMENT OF CASH FLOWS**

**FOR THE SEVEN MONTHS ENDED DECEMBER 31, 2001**

|  | ASHFORD | DASSEE | Combined Totals |
|---|---|---|---|
| **CASH FLOWS FROM OPERATING ACTIVITIES AND GAINS AND LOSSES:** | | | |
| Revenues and gains in excess of expenses and losses: | $904,037 | ($93,070) | $810,967 |
| Adjustments to reconcile revenues and gains in excess of expenses and losses to net cash provided by operating activities and gains and losses: | | | |
| Depreciation | 20,068 | 45,788 | 65,856 |
| (Increase) in accounts receivable | (2,783,118) | (2,332,238) | (5,115,356) |
| (Increase) in other assets | (109,508) | (2,679,748) | (2,789,256) |
| Increase (decrease) in liabilities | 2,375,556 | 3,252,780 | 5,628,336 |
| Total adjustments | (497,002) | (1,713,418) | (2,210,420) |
| Net Cash (Used) Provided by Operating activities: | 407,035 | (1,806,488) | (1,399,453) |
| **CASH FLOWS PROVIDED (USED) BY INVESTING ACTIVITIES:** | | | |
| Paid in Capital | 77,882 | 588,049 | 665,931 |
| Capital Outlays | (352,918) | (1,260,374) | (1,613,292) |
| Net Cash (Used) Provided by Investing activities: | (275,036) | (672,325) | (947,361) |
| **CASH FLOWS PROVIDED (USED) BY FINANCING ACTIVITIES:** | | | |
| Loan funds received | 0 | 3,500,000 | 3,500,000 |
| Net Cash (Used) Provided by Financing activities: | 0 | 3,500,000 | 3,500,000 |
| NET INCREASE IN CASH EQUIVALENTS | 131,999 | 1,021,187 | 1,153,186 |
| Cash and cash equivalents, beginning of year | 0 | 0 | 0 |
| CASH AND CASH EQUIVALENTS, END OF YEAR | $131,999 | $1,021,187 | $1,153,186 |

See Accountants' Report and Notes.

6



**DASSEE COMMUNITY HEALTH SYSTEMS, LLC**
**ASHFORD HEALTHCARE SYSTEMS, INC.**

**BALANCE SHEET**

**AS OF DECEMBER 31, 2002**

| | ASHFORD | DASSEE | Eliminations | Combined Totals |
|---|---|---|---|---|
| **ASSETS** | | | | |
| **CURRENT ASSETS** | | | | |
| Cash and cash equivalents -- Notes 1 and 4 | $588 | $744,678 | | $745,266 |
| Accounts receivable - net of Uncollectibles and contractual adjustments -- Notes 1 and 8 | 2,634,180 | 2,294,592 | | 4,928,772 |
| Other receivables | 38,263 | 267,537 | | 305,800 |
| Due from/to intercompany receivable -- Note 11 | | 2,339,278 | (2,339,278) | 0 |
| Inventory -- Note 1 | 71,813 | 59,466 | | 131,279 |
| Total Current Assets | 2,744,844 | 5,705,551 | | 6,111,117 |
| PROPERTY, PLANT AND EQUIPMENT - NET Notes 1 and 2 | 484,653 | 1,281,773 | | 1,766,426 |
| **TOTAL ASSETS** | $3,229,497 | $6,987,324 | ($2,339,278) | $7,877,543 |
| **LIABILITIES AND NET ASSETS** | | | | |
| **LIABILTIES** | | | | |
| **CURRENT LIABILITIES** | | | | |
| Accounts payable | $907,833 | $1,466,864 | | $2,374,697 |
| Accrued wages and payroll liabilities | 21,827 | 58,945 | | 80,772 |
| Accrued vacation and other absences | 113,992 | 95,198 | | 209,190 |
| Due to Medicare | 0 | 0 | | 0 |
| Due to/from intercompany receivable -- Note 11 | 1,087,714 | 1,251,564 | (2,339,278) | 0 |
| Note payable | 0 | 3,265,666 | | 3,265,666 |
| Total Current Liabilities | 2,131,366 | 6,138,237 | | 5,930,325 |
| **NET ASSETS** | | | | |
| Paid in Capital | 77,882 | 461,082 | | 538,964 |
| Unrestricted net assets | 1,020,249 | 388,005 | | 1,408,254 |
| Total Net Assets | 1,098,131 | 849,087 | | 1,947,218 |
| **TOTAL LIABILTIES AND NET ASSETS** | $3,229,497 | $6,987,324 | ($2,339,278) | $7,877,543 |

See Accountants' Report and Notes.



**DASSEE COMMUNITY HEALTH SYSTEMS, LLC**
**ASHFORD HEALTHCARE SYSTEMS, INC.**

**STATEMENT OF OPERATIONS AND CHANGES IN NET ASSETS**

**FOR THE YEAR ENDED DECEMBER 31, 2002**

| | ASHFORD | DASSEE | Eliminations | Combined Totals |
|---|---|---|---|---|
| Unrestricted revenues and other support: | | | | |
| Net patient service revenue -- Note 3 | $7,942,877 | $8,370,788 | | $16,313,665 |
| Other operating revenue | 823,353 | 2,371,677 | (710,700) | 2,484,330 |
| Total unrestricted revenues and other support | 8,766,230 | 10,742,465 | | 18,797,995 |
| Expenses | | | | |
| Salaries and wages | 3,840,034 | 3,829,165 | | 7,669,199 |
| Employee benefits | 425,810 | 298,351 | | 724,161 |
| Professional fees | 77,692 | 901,934 | | 979,626 |
| Purchased services | 128,885 | 473,689 | | 602,574 |
| Maintenance and repairs | 157,310 | 118,540 | | 275,850 |
| Supplies | 869,694 | 923,006 | | 1,792,700 |
| Provision for bad debt | 1,904,030 | 1,540,598 | | 3,444,628 |
| Insurance | 139,615 | 278,767 | | 418,382 |
| Utilities | 196,997 | 110,647 | | 307,644 |
| Other | 256,007 | 829,182 | | 1,085,189 |
| Depreciation | 17,836 | 28,928 | | 46,764 |
| Lease expense | 106,438 | 355,000 | | 461,438 |
| Interest | 202,970 | 189,583 | | 392,553 |
| Management fees | 326,700 | 384,000 | (710,700) | 0 |
| Total expenses | 8,650,018 | 10,261,390 | | 18,200,708 |
| Revenues and gains in excess of Expenses and Losses | 116,212 | 481,075 | | 597,287 |
| Net assets, beginning of year | 904,037 | (93,070) | | 810,967 |
| NET ASSETS, END OF YEAR | $1,020,249 | $388,005 | | $1,408,254 |

See Accountants' Report and Notes.

8



**DASSEE COMMUNITY HEALTH SYSTEMS, LLC**
**ASHFORD HEALTHCARE SYSTEMS, INC.**

**STATEMENT OF CASH FLOWS**

**FOR THE YEAR ENDED DECEMBER 31, 2002**

| | ASHFORD | DASSEE | Combined Totals |
|---|---|---|---|
| CASH FLOWS FROM OPERATING ACTIVITIES AND GAINS AND LOSSES: | | | |
| Revenues and gains in excess of expenses and losses: | $116,212 | $481,075 | $597,287 |
| Adjustments to reconcile revenues and gains in excess of expenses and losses to net cash provided by operating activities and gains and losses: | | | |
| Depreciation | 17,836 | 28,928 | 46,764 |
| Decrease in accounts receivable | 148,938 | 37,646 | 186,584 |
| (Increase) in other assets | (568) | 13,467 | 12,899 |
| Increase (decrease) in liabilities | (244,190) | (380,209) | (624,399) |
| Total adjustments | (77,984) | (300,168) | (378,152) |
| Net Cash (Used) Provided by Operating activities: | 38,228 | 180,907 | 219,135 |
| CASH FLOWS PROVIDED (USED) BY INVESTING ACTIVITIES: | | | |
| Paid in Capital | 0 | (126,967) | (126,967) |
| Capital Outlays | (169,639) | (96,115) | (265,754) |
| Net Cash (Used) Provided by Investing activities: | (169,639) | (223,082) | (392,721) |
| CASH FLOWS PROVIDED (USED) BY FINANCING ACTIVITIES: | | | |
| Principle paid on notes payable | 0 | (234,334) | (234,334) |
| Net Cash (Used) Provided by Financing activities: | 0 | (234,334) | (234,334) |
| NET INCREASE IN CASH EQUIVALENTS | (131,411) | (276,509) | (407,920) |
| Cash and cash equivalents, beginning of year | 131,999 | 1,021,187 | 1,153,186 |
| CASH AND CASH EQUIVALENTS, END OF YEAR | $588 | $744,678 | $745,266 |

See Accountants' Report and Notes.

9



**DASSEE COMMUNITY HEALTH SYSTEMS, LLC**
**ASHFORD HEALTHCARE SYSTEMS, INC.**

**BALANCE SHEET**

**AS OF DECEMBER 31, 2003**

|  | ASHFORD | DASSEE | Eliminations | Combined Totals |
|---|---|---|---|---|
| **ASSETS** | | | | |
| **CURRENT ASSETS** | | | | |
| Cash and cash equivalents -- Notes 1 and 4 | $125 | $130,582 | | $130,707 |
| Accounts receivable - net of | | | | |
| Uncollectibles and contractual adjustments -- | | | | |
| Notes 1 and 8 | 3,036,325 | 3,550,946 | | 6,587,271 |
| Other receivables | 0 | 968,137 | | 968,137 |
| Due from Medicare | 378,119 | 0 | | 378,119 |
| Due from/to intercompany receivable -- Note 11 | 0 | 2,857,127 | (2,857,127) | 0 |
| Inventory -- Note 1 | 86,813 | 73,533 | | 160,346 |
| Total Current Assets | 3,501,382 | 7,580,325 | | 8,224,580 |
| PROPERTY, PLANT AND EQUIPMENT - NET Notes 1 and 2 | 432,398 | 1,173,444 | | 1,605,842 |
| **TOTAL ASSETS** | $3,933,780 | $8,753,769 | ($2,857,127) | $9,830,422 |
| **LIABILITIES AND NET ASSETS** | | | | |
| **LIABILTIES** | | | | |
| **CURRENT LIABILITIES** | | | | |
| Accounts payable | $879,076 | $1,804,436 | | $2,683,512 |
| Accrued wages and payroll liabilities | 219,026 | 203,474 | | 422,500 |
| Accrued vacation and other absences | 96,832 | 148,582 | | 245,414 |
| Due to Medicare | 0 | 112,975 | | 112,975 |
| Due to/from intercompany receivable -- Note 11 | 1,345,959 | 1,511,168 | (2,857,127) | 0 |
| Deferred Revenue | 0 | 0 | | 0 |
| Note Payable | 0 | 0 | | 0 |
| Note payable | 0 | 3,917,835 | | 3,917,835 |
| Total Current Liabilities | 2,540,893 | 7,698,470 | | 7,382,236 |
| **NET ASSETS** | | | | |
| Paid in Capital | 77,882 | 461,082 | | 538,964 |
| Unrestricted net assets | 1,315,005 | 594,217 | | 1,909,222 |
| Total Net Assets | 1,392,887 | 1,055,299 | | 2,448,186 |
| TOTAL LIABILTIES AND NET ASSETS | $3,933,780 | $8,753,769 | ($2,857,127) | $9,830,422 |

See Accountants' Report and Notes.



**DASSEE COMMUNITY HEALTH SYSTEMS, LLC**
**ASHFORD HEALTHCARE SYSTEMS, INC.**

**STATEMENT OF OPERATIONS AND CHANGES IN NET ASSETS**

**FOR THE YEAR ENDED DECEMBER 31, 2003**

|  | ASHFORD | DASSEE | Eliminations | Combined Totals |
|---|---|---|---|---|
| Unrestricted revenues and other support: |  |  |  |  |
| Net patient service revenue -- Note 3 | $8,309,131 | $9,726,930 |  | $18,036,061 |
| Other operating revenue | 942,554 | 2,255,956 | (1,192,885) | 2,005,625 |
| Total unrestricted revenues and other support | 9,251,685 | 11,982,886 |  | 20,041,686 |
| Expenses |  |  |  |  |
| Salaries and wages | 3,979,236 | 4,541,499 |  | 8,520,735 |
| Employee benefits | 459,753 | 585,383 |  | 1,045,136 |
| Professional fees | 120,915 | 1,109,364 |  | 1,230,279 |
| Purchased services | 101,537 | 541,587 |  | 643,124 |
| Maintenance and repairs | 43,008 | 220,539 |  | 263,547 |
| Supplies | 612,499 | 1,048,389 |  | 1,660,888 |
| Provision for bad debts | 1,789,182 | 1,554,028 |  | 3,343,210 |
| Insurance | 86,275 | 244,958 |  | 331,233 |
| Utilities | 200,792 | 136,649 |  | 337,441 |
| Other | 581,078 | 550,368 |  | 1,131,446 |
| Depreciation | 52,255 | 121,704 |  | 173,959 |
| Lease expenses | 110,000 | 380,000 |  | 490,000 |
| Interest | 203,001 | 166,719 |  | 369,720 |
| Management fees | 617,398 | 575,487 | (1,192,885) | 0 |
| Total expenses | 8,956,929 | 11,776,674 |  | 19,540,718 |
| Revenues and gains in excess of Expenses and Losses | 294,756 | 206,212 |  | 500,968 |
| Net assets, beginning of year | 1,020,249 | 388,005 |  | 1,408,254 |
| NET ASSETS, END OF YEAR | $1,315,005 | $594,217 |  | $1,909,222 |

See Accountants' Report and Notes.



**DASSEE COMMUNITY HEALTH SYSTEMS, LLC**
**ASHFORD HEALTHCARE SYSTEMS, INC.**

**STATEMENT OF CASH FLOWS**

**FOR THE YEAR ENDED DECEMBER 31, 2003**

| | ASHFORD | DASSEE | Combined Totals |
|---|---|---|---|
| CASH FLOWS FROM OPERATING ACTIVITIES AND GAINS AND LOSSES: | | | |
| Revenues and gains in excess of expenses and losses: | $294,756 | $206,212 | $500,968 |
| Adjustments to reconcile revenues and gains in excess of expenses and losses to net cash provided by operating activities and gains and losses: | | | |
| Depreciation | 52,255 | 121,704 | 173,959 |
| (Increase) in accounts receivable | (402,145) | (1,256,654) | (1,658,799) |
| (Increase) in other assets | (354,856) | (1,232,516) | (1,587,372) |
| Increase (decrease) in liabilities | 409,527 | 908,064 | 1,317,591 |
| Total adjustments | (295,219) | (1,459,402) | (1,754,621) |
| Net Cash (Used) Provided by Operating activities: | (463) | (1,253,190) | (1,253,653) |
| CASH FLOWS PROVIDED (USED) BY INVESTING ACTIVITIES: | | | |
| Capital Outlays | 0 | (13,375) | (13,375) |
| Net Cash (Used) Provided by Investing activities: | 0 | (13,375) | (13,375) |
| CASH FLOWS PROVIDED (USED) BY FINANCING ACTIVITIES: | | | |
| Loan funds added | 0 | 652,169 | 652,169 |
| Net Cash (Used) Provided by Financing activities: | 0 | 652,169 | 652,169 |
| NET INCREASE IN CASH EQUIVALENTS | (463) | (614,396) | (614,859) |
| Cash and cash equivalents, beginning of year | 588 | 744,678 | 745,266 |
| CASH AND CASH EQUIVALENTS, END OF YEAR | $125 | $130,282 | $130,407 |

See Accountants' Report and Notes.

12



**DASSEE COMMUNITY HEALTH SYSTEMS, LLC**
**ASHFORD HEALTHCARE SYSTEMS, INC.**

**BALANCE SHEET**

**AS OF DECEMBER 31, 2004**

| | ASHFORD | DASSEE | Eliminations | Combined Totals |
|---|---|---|---|---|
| **ASSETS** | | | | |
| **CURRENT ASSETS** | | | | |
| Cash and cash equivalents -- Notes 1 and 4 | $1,646 | $126,068 | | $127,714 |
| Accounts receivable - net of Uncollectibles and contractual adjustments -- Notes 1 and 8 | 4,812,041 | 3,826,893 | | 8,638,934 |
| Other receivables | 33,120 | 108,718 | | 141,838 |
| Due from/to intercompany receivable -- Note 11 | 0 | 4,608,864 | (4,608,864) | 0 |
| Inventory -- Note 1 | 0 | 34,212 | | 34,212 |
| Total Current Assets | 4,846,807 | 8,704,755 | | 8,942,698 |
| PROPERTY, PLANT AND EQUIPMENT - NET Notes 1 and 2 | 224,042 | 538,057 | | 762,099 |
| TOTAL ASSETS | $5,070,849 | $9,242,812 | ($4,608,864) | $9,704,797 |
| **LIABILITIES AND NET ASSETS** | | | | |
| **LIABILTIES** | | | | |
| **CURRENT LIABILITIES** | | | | |
| Accounts payable | $836,163 | $1,402,631 | | $2,238,794 |
| Accrued wages and payroll liabilities | 53,423 | 240,221 | | 293,644 |
| Accrued vacation and other absences | 51,719 | 307,297 | | 359,016 |
| Due to/from intercompany receivable -- Note 11 | 2,483,299 | 2,125,565 | (4,608,864) | 0 |
| Medicare Settlement Reserve | 38,673 | 396,387 | | 435,060 |
| Note payable | 0 | 3,445,000 | | 3,445,000 |
| Total Current Liabilities | 3,463,277 | 7,917,101 | | 6,771,514 |
| **NET ASSETS** | | | | |
| Paid in Capital | 77,882 | 461,082 | | 538,964 |
| Unrestricted net assets | 1,529,690 | 864,629 | | 2,394,319 |
| Total Net Assets | 1,607,572 | 1,325,711 | | 2,933,283 |
| TOTAL LIABILTIES AND NET ASSETS | $5,070,849 | $9,242,812 | ($4,608,864) | $9,704,797 |

See Accountants' Report and Notes.



**DASSEE COMMUNITY HEALTH SYSTEMS, LLC**
**ASHFORD HEALTHCARE SYSTEMS, INC.**

**STATEMENT OF OPERATIONS AND CHANGES IN NET ASSETS**

**FOR THE YEAR ENDED DECEMBER 31, 2004**

|  | ASHFORD | DASSEE | Eliminations | Combined Totals |
|---|---|---|---|---|
| Unrestricted revenues and other support: |  |  |  |  |
| Net patient service revenue -- Note 3 | $8,394,929 | $10,815,973 |  | $19,210,902 |
| Other operating revenue | 947,913 | 3,014,713 | (1,602,148) | 2,360,478 |
| Total unrestricted revenues and other support | 9,342,842 | 13,830,686 |  | 21,571,380 |
| Expenses |  |  |  |  |
| Salaries and wages | 3,909,333 | 5,361,934 |  | 9,271,267 |
| Employee benefits | 312,149 | 761,289 |  | 1,073,438 |
| Professional fees | 0 | 1,044,856 |  | 1,044,856 |
| Purchased services | 261,157 | 648,816 |  | 909,973 |
| Maintenance and repairs | 121,112 | 96,422 |  | 217,534 |
| Supplies | 764,876 | 1,066,426 |  | 1,831,302 |
| Provision for bad debts | 2,139,884 | 2,613,566 |  | 4,753,450 |
| Insurance | 4,107 | 223,800 |  | 227,907 |
| Utilities | 203,806 | 158,084 |  | 361,890 |
| Other | 192,731 | 47,223 |  | 239,954 |
| Depreciation | 40,472 | 92,941 |  | 133,413 |
| Lease expense | 119,848 | 360,000 |  | 479,848 |
| Interest | 281,444 | 260,007 |  | 541,451 |
| Management fees | 777,238 | 824,910 | (1,602,148) | 0 |
| Total expenses | 9,128,157 | 13,560,274 |  | 21,086,283 |
| Revenues and gains in excess of Expenses and Losses | 214,685 | 270,412 |  | 485,097 |
| Net assets, beginning of year | 1,315,005 | 594,217 |  | 1,909,222 |
| NET ASSETS, END OF YEAR | $1,529,690 | $864,629 |  | $2,394,319 |

See Accountants' Report and Notes.

14



**DASSEE COMMUNITY HEALTH SYSTEMS, LLC
ASHFORD HEALTHCARE SYSTEMS, INC.**

**STATEMENT OF CASH FLOWS**

**FOR THE YEAR ENDED DECEMBER 31, 2004**

| | ASHFORD | DASSEE | Combined Totals |
|---|---|---|---|
| CASH FLOWS FROM OPERATING ACTIVITIES AND GAINS AND LOSSES: | | | |
| Revenues and gains in excess of expenses and losses: | $214,685 | $270,412 | $485,097 |
| Adjustments to reconcile revenues and gains in excess of expenses and losses to net cash provided by operating activities and gains and losses: | | | |
| Depreciation | 40,472 | 92,941 | 133,413 |
| (Increase) in accounts receivable | (1,775,716) | (275,647) | (2,051,363) |
| (Increase) in other assets | 431,812 | (852,997) | (421,185) |
| Decrease in equipment | 167,884 | 542,446 | 710,330 |
| Increase (decrease) in liabilities | 922,384 | 691,466 | 1,613,850 |
| Total adjustments | (213,164) | 198,209 | (14,955) |
| Net Cash (Used) Provided by Operating activities: | 1,521 | 468,621 | 470,142 |
| | | | |
| CASH FLOWS PROVIDED (USED) BY INVESTING ACTIVITIES: | | | |
| Capital Outlays | 0 | 0 | 0 |
| Net Cash (Used) Provided by Investing activities: | 0 | 0 | 0 |
| | | | |
| CASH FLOWS PROVIDED (USED) BY FINANCING ACTIVITIES: | | | |
| Principle paid on notes payable | 0 | (472,835) | (472,835) |
| Net Cash (Used) Provided by Financing activities: | 0 | (472,835) | (472,835) |
| NET INCREASE IN CASH EQUIVALENTS | 1,521 | (4,214) | (2,693) |
| Cash and cash equivalents, beginning of year | 125 | 130,282 | 130,407 |
| CASH AND CASH EQUIVALENTS, END OF YEAR | $1,646 | $126,068 | $127,714 |

See Accountants' Report and Notes.

15

**ASSEE COMMUNITY HEALTH SYSTEMS, LLC,
ASHFORD HEALTHCARE SYSTEMS, INC.**

**NOTES TO FINANCIAL STATEMENTS**

## NOTE 1 - SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

DasSee Community Health Systems, LLC (DasSee) a corporation organized and existing under the laws of the State of Georgia, leases and operates two Florida Hospitals providing inpatient, outpatient and emergency care services for residents in surrounding areas. DasSee is also the sole owner in Ashford Healthcare Systems, Inc., a Florida not-for-profit corporation, organized and existing under the laws of the State of Florida , which leases and operates one Florida Hospital providing inpatient, outpatient and emergency care services for residents in surrounding areas.

Although the Hospitals are not separate legal entities, separate financial records are maintained. The accompanying financial statements include assets, liabilities, revenues, and expenses that are associated with the operations of the Hospitals and Home Office. The divisional net deficit, as reflected in the financial statements, include the initial capitalization of the Hospitals and the cumulative results of its operations.

**Operating and Nonoperating Activities**

The Corporations' primary mission is to provide health care services to the residents in the community it serves. Activities directly associated with the furtherance of this purpose are considered to be operating activities.

Other activities that result in gains or losses unrelated to the Corporations' primary mission are considered to be nonoperating. Nonoperating gains and losses include investment earnings on investments other than trusteed-held investments related to borrowed funds.

**Accounting Policies**

The accounting policies of the Corporations conform to generally accepted accounting principles. The following is a summary of the more significant policies:

    A.    Basis of Accounting

        The accounting records of the Corporations are maintained on the accrual basis of accounting.

-16-

ASSEE COMMUNITY HEALTH SYSTEMS, LLC,
ASHFORD HEALTHCARE SYSTEMS, INC.

**Notes to Financial Statements - continued**

## NOTE 1 - SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES - continued

B.    Tax Status

DasSee is a for-profit partnership and income is passed directly to the partners. Ashford, a corporation, is taxed at the corporate level.

C.    Cash and Cash Equivalents

Cash and cash equivalents include cash on hand, demand deposits and certificates of deposit with original maturities of twelve months or less. All bank balances of cash deposits are federally insured in limited amounts.

D.    Net Patient Service Revenues and Receivables

Net patient service revenue and receivables are reported at the estimated net realizable amounts from patients, third-party payers, and others for services rendered, including estimated retroactive adjustments under reimbursement agreements with third-party payers. Retroactive adjustments are accrued on an estimated basis in the period the related services are rendered and adjusted in future periods as final settlements are determined.

The Hospitals are providers of services under the Medicare and Medicaid programs and are entitled to reimbursement from federal and state governments of charges to Medicare and Medicaid patients under provisions of cost reimbursement formulas. Amounts received under these programs are generally less than the Hospitals' billing rates and the difference is accounted for as "contractual allowances". Final determination of amounts earned is subject to review by appropriate governmental authorities or their agents.

Final settlements have been made on the Medicare cost reports for the year 2000 and prior years. Tentative settlements have been made on years through 2002, which is still subject to review.

-17-

ASSEE COMMUNITY HEALTH SYSTEMS, LLC,
ASHFORD HEALTHCARE SYSTEMS, INC.

**Notes to Financial Statements - continued**

## NOTE 1 - SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES - continued

E.     Property, Plant and Equipment

Property, plant and equipment are stated at historical cost. Assets acquired by gift are recorded at their fair market value at the date of transfer. Depreciation of exhaustible fixed assets is charged as an expense against operations. Depreciation has been provided over the estimated useful lives using the straight-line method of depreciation. Major asset classifications and useful lives are generally in accordance with those recommended by the American Hospital Association. Capitalized lease assets are recorded at the lesser of the net present value of the minimum lease payments or the fair market value of the asset. Amortization is provided using the straight-line method over the respective estimated lives of the leased assets or the lease term, if shorter. Interest cost on borrowed funds during the period of construction of capital assets is capitalized as a component of the cost of acquiring those assets.

F.     Charity Care

Quality medical care is provided to all persons requiring immediate treatment regardless of their ability to pay. A patient is classified as a charity patient by reference to certain established policies of the Hospital. Essentially, these policies define charity services as those services for which no payment is anticipated. In assessing a patient's inability to pay, the Hospital utilizes the most recently published Federal poverty income guidelines, but also includes certain cases where incurred charges are significant when compared to income. In addition, charity services include charges for services provided to Medicaid patients less payments actually received. These charges are not included in net patient service revenue

G.     Use of Estimates

The preparation of financial statements in conformity with generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

-18-

ASSEE COMMUNITY HEALTH SYSTEMS, LLC,
ASHFORD HEALTHCARE SYSTEMS, INC.

**Notes to Financial Statements - continued**

## NOTE 1 - SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES - continued

H.    Excess of Revenues Over Expenses

The statement of operations and changes in net assets include excess of revenues over expenses. Changes in unrestricted net assets which are excluded from excess of expenses over revenues, consistent with industry practice, include unrealized gains and losses on investments other than trading securities, permanent transfers of assets to and from affiliates for other than goods and services, and contributions of long-lived assets (including assets acquired using contributions which by donor restriction were to be used for the purposes of acquiring such assets).

I.    Donor-Restricted Gifts

Unconditional promises to give cash and other assets to the Corporations are reported at fair value at the date the promise is received. Conditional promises to give and indications of intentions to give are reported at fair value at the date the gift is received. The gifts are reported as either temporarily or permanently restricted support if they are received with donor stipulations that limit the use of the donated assets. When a donor restriction expires, that is, when a stipulated time restriction ends or purpose restriction is accomplished, temporarily restricted net assets are reclassified as unrestricted net assets and reported in the statement of operations and changes in net assets as net assets released from restrictions. Donor-restricted contributions whose restrictions are met within the same year as received are reported as unrestricted contributions in the accompanying financial statements.

J.    Temporarily and Permanently Restricted Net Assets

Temporarily restricted net assets are those whose use by the Hospital has been limited by donors to a specific time period or purpose. Permanently restricted net assets have been restricted by donors to be maintained by the Corporation in perpetuity.

-19-



ASSEE COMMUNITY HEALTH SYSTEMS, LLC,
ASHFORD HEALTHCARE SYSTEMS, INC.

**Notes to Financial Statements - continued**

## NOTE 2 - PROPERTY, PLANT AND EQUIPMENT

The Corporation leases various equipment under noncancellable operating leases, which were minimal.

The Hospitals received a grant from the State of Florida for the year ended December 31, 2001. The grant was for the purpose of accumulating fixed equipment for the Hospital. The assets are the property of DasSee after five years. If the assets are sold during that five year waiting period, the funds received are to be returned to the State of Florida.

## NOTE 3 - NET PATIENT SERVICE REVENUE

The Corporations have agreements with third-party payers that provide for payments to the Hospitals at amounts different from its established rates. A summary of the payment arrangements with major third-party payers follows.

**Medicare**

The Hospitals changed their status from acute care hospitals to a critical access hospitals on June 1, 2001. Critical Access Hospitals are reimbursed under reasonable cost reimbursement method for both inpatient and outpatient services. The Hospitals are paid at interim rates during the year and final settlement determined after submission of annual cost reports by the Hospitals and audits thereof by the Medicare fiscal intermediary. These settlements are estimated and recorded in the financial statements. Medicare cost reports for all years prior to 2000 have been reviewed and settled as of December 31, 2004.

-20-

ASSEE COMMUNITY HEALTH SYSTEMS, LLC,
ASHFORD HEALTHCARE SYSTEMS, INC.

**Notes to Financial Statements - continued**

## NOTE 3 - NET PATIENT SERVICE REVENUE - continued

**Medicaid**

Services rendered to Medicaid patients are paid on a per diem amount (for inpatient services) or an amount per-line-item (for outpatient services). The per diem or per-line-item payment amounts are based on filed cost reports. Retroactive adjustments are made to these payment amounts after the related cost report is audited by the intermediary. These settlements are estimated and recorded in the financial statements.

Regulations governing the Medicare and Medicaid programs are complex and subject to interpretation. The Hospitals believe that it is in compliance with all applicable laws and regulations and is not aware of any pending or threatened investigations involving allegations of potential wrongdoing. While no such regulatory inquiries have been made, compliance with such laws and regulations can be subject to future government review and interpretation as well as significant regulatory action including fines, penalties, and exclusion from the Medicare and Medicaid programs. Changes in the Medicare and Medicaid programs and the reduction of funding levels could have an adverse impact on the Hospitals.

**Other**

The Corporations have also entered into payment agreements with certain commercial insurance carriers, health maintenance organizations, and preferred provider organizations. The basis for payment to the Corporation under these agreements includes prospectively determined rates per discharge, discounts from established charges, and prospectively determined daily rates.

## NOTE 4 - NOTE PAYABLE

DasSee Community Health Systems, LLC has advanced significant funds to the Hospitals since the inception of the leases, or when applicable, borrowed from the Hospitals based on cash flow. In addition, DasSee entered into a factoring of accounts receivable agreement with Heller Financial and later GE. DasSee is the responsible party on the note, but the Hospital's accounts receivable are pledged as collateral. The intercompany advances from DasSee to the Hospitals are a result of this transaction. All remittances from Medicare and Medicaid go directly to GE for the servicing of the loan. The Corporation then takes advances as needed.

-21-

**ASSEE COMMUNITY HEALTH SYSTEMS, LLC,
ASHFORD HEALTHCARE SYSTEMS, INC.**

**Notes to Financial Statements - continued**


## NOTE 5 - COMMITMENTS AND CONTINGENCIES

**Management Agreements**

The Hospitals were managed by an affiliated company, Centennial Healthcare Management Corporation ("CHMC") for the month of January 2001. Beginning February 1, 2001, CHMC entered into a management agreement with DasSee Community Health Systems, LLC., an unrelated organization. Under both management agreements, CHMC and DasSee are to provide working capital funds to the Hospital during their respective terms. In addition, the results of operations are solely the responsibility of CHMC and DasSee, respectively, and any deficit or profit from those operations shall be the burden of each respective corporation during their term.

As of June 1, 2001, the Hospitals entered into an agreement for the leasehold rights to be acquired by DasSee Community Health Systems, LLC. A mutual agreement was reached whereby all amounts due to Centennial Healthcare Investment Corporation were forgiven as part of this transaction with DasSee acquiring the remaining net assets of the leased facility for assumption of the remaining excess of liabilities over assets.

**Physician Agreements**

The Hospitals have entered into various agreements with physicians under which the physicians are providing services to the Hospital and/or patients in its service area. Under the terms of these agreements, the Hospitals have agreed to pay certain fees for specific periods of time.

**Medical Malpractice Insurance**

The Corporation purchases professional and general liability insurance to cover medical malpractice claims. There are known claims and incidents that may result in the assertion of additional claims, as well as claims from unknown incidents that may be asserted arising from services provided to patients. Legal counsel had advised the Corporation that the ultimate outcome of these claims cannot presently be determined. Accordingly, the financial statements do not include a provision or a liability related to these claims. If the claims are settled or adjudicated for amounts in excess of the Corporation's insurance coverage, the result could have a material adverse effect on the Corporation's financial position and on its ability to continue as a going concern.

-22-

ASSEE COMMUNITY HEALTH SYSTEMS, LLC,
A DIVISION OF DASSEE COMMUNITY HEALTH SYSTEMS, INC.

**Notes to Financial Statements - continued**

## NOTE 5 - COMMITMENTS AND CONTINGENCIES - continued

### Medicare and Medicaid Programs and Health Care Reform

Laws and regulations governing the Medicare and Medicaid programs are complex and are subject to interpretation. The Corporationl believes that it is in compliance with all applicable laws and regulations and is not aware of any pending or threatened investigations involving allegations of potential wrongdoing. While no such regulatory inquiries have been made, compliance with such laws and regulations can be subject to future governmental review and interpretation, as well as significant regulatory action, including fines, penalties and exclusion from the Medicare and Medicaid programs.

Governmental funding for healthcare programs is subject to statutory and regulatory changes, administrative rulings, interpretations of policy, intermediary determinations and governmental funding restrictions, all of which may materially affect program reimbursement to healthcare facilities. Changes in the reimbursement policies of the Medicaid and Medicare programs, as a result of legislative and regulatory actions, could adversely affect the revenues of the Corporation.

## NOTE 6 - CONCENTRATION OF CREDIT RISK

The Corporation grants credit without collateral to its patients, most of whom are local residents and are insured under third-party payer agreements.

## NOTE 7 - OPERATING LEASE

The Corporation leases the Hospital facilities under 10-year operating leases, which expires on June 30, 2007, and the lessee has the right to extend the lease for two successive extension terms of five years each. The Hospitals are leased by DasSee.

-23-

)ASSEE COMMUNITY HEALTH SYSTEMS, LLC,
ASHFORD HEALTHCARE SYSTEMS, INC.

**Notes to Financial Statements - continued**

## NOTE 8 - LEGAL MATTERS

As of December 31, 2004, Management is unaware of any threatened or pending litigation against either of the corporations.